## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| PAT ELLEBRACHT, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br> vs. <br><br> MOCON, INC., ROBERT L. DEMOREST, ROBERT F. GALLAGHER, BRADLEY D. GOSKOWICZ, TOM C. THOMAS, DAVID J. WARD, KATHLEEN IVERSON, and PAUL R. ZELLER <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND INDIVIDUAL CLAIMS FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Pat Ellebracht ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act Of 1934.  In support of this class action complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### INTRODUCTION

1.      Plaintiff brings this action on behalf of himself and the public stockholders of MOCON, Inc. ("MOCON" or the "Company") against the Company and its Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below), for violations of Sections 20(a) and 14(a) of the Securities Exchange Act of 1934

(the "Exchange Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9"). The Company and the Individual Defendants are referred to herein as "Defendants." Specifically, Defendants seek stockholder votes in connection with the sale of the Company to AMETEK, Inc. ("Parent") through a proxy statement that omits material facts necessary to make the statements therein not false or misleading. Stockholders require this material information to make an informed vote

2.    On April 17, 2017, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement"), dated April 16, 2017, by which Parent, through its wholly owned subsidiary AMETEK Atom, Inc., (the "Merger Sub," and together with Parent, "AMETEK") will acquire all of the outstanding shares of MOCON in an all-cash transaction (the "Proposed Transaction"). If consummated, MOCON stockholders will receive $30.00 in cash for each share of MOCON stock that they own ("Merger Consideration"). The Proposed Transaction was valued at approximately $182 million at the time of the announcement.

3.    On April 28, 2017, defendants issued materially incomplete and misleading disclosures in the Schedule 14A Information Statement (the "Proxy Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Proxy Statement materially misleading in that it fails to provide adequate disclosure of material information related to the Proposed Transaction.

4.    Specifically, the Proxy Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the financial projections prepared by the Company and relied upon by the Company's financial advisor, and omits

material information with respect to the process and events leading up to the Proposed Transaction, including material information concerning Baird's conflicts of interest and the confidentiality agreements entered into by potential strategic partners. Without this information, MOCON stockholders cannot make an informed decision with respect to the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to make a fully-informed vote on the Proposed Transaction.

5.    For these reasons and as set forth in detail herein, the Individual Defendants, and the Company, have violated federal securities laws.  Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

7.    The Court has personal jurisdiction over each of the Individual Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) MOCON maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of shares of MOCON common stock.

10.     Defendant MOCON is a Minnesota corporation, headquartered in Minneapolis, Minnesota that designs, manufactures, markets and services products, and provides consulting services, primarily in the test and measurement, analytical instrument and services markets. The Company's products include instruments that detect, measure and monitor gases and other chemical compounds which help our customers improve the quality of their products, as well as develop new products. MOCON common stock is traded on the NASDAQ under the ticker symbol "MOCO."

11.    Defendant Robert L. Demorest ("Demorest") is the President and Chief Executive Officer of the Company and the Bank. He has served as Chairman of the Board since April 2000.

12.    Defendant Robert F. Gallagher ("Gallagher") is an independent director of MOCON. Gallagher has served in this capacity since 2005.

13.    Defendant Tom C. Thomas ("Thomas") has been a director of the Company since 1997.

14.    Defendant Bradley D. Goskowicz ("Goskowicz") has been a director of the Company since 2012.

15.    Defendant Paul R. Zeller ("Zeller") has been a director of the Company since 2014.

16.    Defendant Kathleen P. Iverson ("Iverson") has served as a director of MOCON since 2014.

17.    Defendant David J. Ward ("Ward") has served as a director of MOCON since 2012.

18.    Defendants Ward, Iverson, Zeller, Goscowicz, Thomas, Gallagher, and Demorest are collectively referred to as "Individual Defendants" and/or the "Board."

## OTHER RELEVANT ENTITIES

19.    Parent, a Delaware corporation, is a leading global manufacturer of electronic instruments and electro-mechanical devices with annual sales of approximately $4.0 billion. The Company operates in North America, Europe, Asia and South America, and maintains its principal executive offices at 1100 Cassatt Road,

Berwyn, Pennsylvania 19312. AMETEK's common stock is traded on the New York Stock Exchange under the symbol "AME."

20.    Merger Sub, is a Minnesota corporation and a wholly owned subsidiary of Parent. It was formed solely for the purpose of effecting the merger and the transactions contemplated by the merger agreement and it has not engaged in any other business.

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action individually and as a class action on behalf of all holders of MOCON stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

22.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

23.    The Class is so numerous that joinder of all members is impracticable. According to the Proxy Statement, as of April 13, 2017, there were 6,664,246 Shares issued and outstanding. These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

24.    There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

       a.    whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

b.      whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

25.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

26.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

28.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

29.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

30.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

**Company Background**

31.    MOCON is a leading provider of detectors, instruments, systems and consulting services to research laboratories, production facilities, and quality control and safety departments in the medical, pharmaceutical, food and beverage, packaging, environmental, oil and gas and other industries worldwide.

32.    MOCON's continued success is best exhibited by the strong growth in revenue that has recently seen MOCON post sales of approximately $63 million, an increase of 4 percent compared to $60.8 million for 2015. Despite these results, and the fact that MOCON is well-positioned, as a stand-alone company, to enjoy a bright financial outlook and generate significant earnings in the foreseeable future, the Board has agreed to a merger with AMETEK.

33.    In light of MOCON's recent and historical financial performance and strong growth prospects, it is vital that MOCON's stockholders receive all material information concerning the Proposed Transaction, so that they may make an informed vote on the Proposed Transaction and/or seek appraisal for their stock.

**The Merger Process**

34.    The story of this merger begins in the latter half of 2015. In October of 2015, after considering presentations from four prospective financial advisory firms, MOCON retained Robert W. Baird & Co. Incorporated ("Baird") to act as its financial advisor with an eye towards exploring possible strategic opportunities.

8

35.    In the year following the retention of Baird, MOCON and Baird worked closely to evaluate MOCON's situation, market environment, and framework for evaluating strategic alternatives. As part of this process, and in order to facilitate and explore the viability of a transaction involving the sale of MOCON as a means of maximizing shareholder value, the Board formed a special committee (the "Special Committee"), consisting entirely of "disinterested" directors to review, consider, evaluate and possibly act upon various strategic alternatives that might be available to MOCON.

36.    From November 2016 to January 2017, Baird contacted 53 potential buyers, consisting of 37 strategic buyers and 16 financial buyers. Of the companies contacted, 36 potential buyers entered into confidentiality agreements and were granted access to confidential evaluation materials prepared by Baird. The confidentiality agreements contained customary "standstill" provisions that prohibited the companies for a stated period of time from making unsolicited offers to acquire MOCON outside of the process being run by Baird.

37.    Over the next month, these 36 potential buyers conducted preliminary business and financial due diligence based on the confidential evaluation materials, public documents, and discussions with Baird. This review resulted in nine companies, six strategic buyers and three financial buyers submitting indications of interest for a potential acquisition of MOCON that ranged from $20.73 to $26.00 per share.

38.    On February 21, 2017, the Board held a special meeting to discuss the various proposals. Following this review, the Board directed management and Baird to

continue discussions with each of the six strategic parties who submitted an indication of interest.

39.     Information sharing and due diligence between the parties proceeded during the weeks of February 26 and March 5, 2017, and on March 7, 2017, MOCON opened an electronic data room to facilitate due diligence investigations by the six strategic parties.

40.     Over the next month, due diligence continued, eventually resulting in two of the potential strategic parties declining to submit an updated proposal for a transaction with MOCON, and the remaining four strategic parties all submitting updated proposals in early April. On April 7, 2017, Party D submitted a proposal for a stock-for-stock transaction at a value of $25.50 per share. On April 10, 2017, each of the other three parties submitted proposals for a cash-for-stock transaction. Party C proposed a price of $25.50 per share, and Party B and AMETEK proposed a price of $27.00 per share and $28.00 per share, respectively.

41.     On April 11, 2017, a telephonic meeting of the Special Committee was held to review the revised indication of interest. Following this review, the Special Committee authorized Baird to share preliminary financial results from the first quarter of 2017 with each of the four parties.  Additionally, the Special Committee ordered Baird to seek an increased price from all four parties.

42.     The following day, on April 12, 2017, all four parties submitted updated proposals. Party D raised its price from $25.50 to $26.50 per share, payable in shares of stock of Party D. Party C raised its price from $25.50 to $28.25 per share. Party B raised its price from $27.00 to $29.00, and AMETEK raised its price from $28.00 to $29.00.

43.    That same day, after reviewing all four proposals, Baird informed each of AMETEK and Party B that their proposals were economically indistinguishable from one another. In response, on April 13, 2017, Party B raised the price in its final proposal from $29.00 to $29.50, and AMETEK raised the price in its final proposal from $29.00 to $30.00. Following the receipt of the updated proposals from Party B and AMETEK, the Special Committee decided to proceed with the potential transaction with AMETEK.

44.    Negotiations between MOCON and AMETEK, and their respective representatives, continued for the next three days until the agreement was finalized. On April 16, 2017, MOCON's board of directors held a telephonic special meeting and, following a review of the Merger Agreement and a presentation by Baird of its financial analysis of the proposed transaction, unanimously determined: that the merger agreement and the transactions contemplated thereby, including the merger, were advisable and in the best interests of MOCON and its shareholders; approved, adopted, and declared advisable the merger agreement and the transactions contemplated therein, including the merger; recommended that MOCON's shareholders approve and adopt the merger agreement and the merger; and directed that approval of the merger and the adoption of the merger agreement be submitted to the shareholders of MOCON. AMETEK and MOCON executed the merger agreement later that same day,

**The Merger Announcement**

45.    In a press release dated April 17, 2017, MOCON announced that it had entered into a Merger Agreement with AMETEK pursuant to which AMETEK will acquire all of the outstanding shares of MOCON for $30 per share in cash.

46.    The press release states in pertinent part:

AMETEK, Inc. (NYSE: AME) and MOCON, Inc. (NASDAQ: MOCO)
announced that they have entered into a definitive merger agreement under
which AMETEK will acquire all of the outstanding shares of common
stock of MOCON at a price of $30 per share in cash, which represents a
premium of 39% to MOCON's closing share price on April 13, 2017. The
aggregate enterprise value of the transaction is approximately $182 million,
taking into account MOCON's outstanding equity awards and net cash to
be acquired in the transaction. The transaction was unanimously approved
by the Board of Directors of MOCON.

Founded in 1963 and headquartered in Minneapolis, MN, MOCON is a
leading provider of laboratory and field gas analysis instrumentation to
research laboratories, production facilities and quality control departments
in food and beverage, pharmaceutical, and industrial applications. For the
calendar year ending December 31, 2016, MOCON had sales of
approximately $63 million.

"MOCON is an excellent company that has tremendous synergy with
AMETEK," comments David A. Zapico, AMETEK Chief Executive
Officer. "They are the global leader in gas analysis instrumentation for
package and permeation testing. Its products and technologies nicely
complement our existing gas analysis instrumentation business and
provides [sic] us with opportunities to expand into the growing food and
pharmaceutical package testing market."

"We believe this transaction creates significant value for our shareholders
and provides long-term benefits for our customers and employees," said
Robert L. Demorest, MOCON President and Chief Executive Officer. "By
joining a larger global enterprise, MOCON will have the resources to
expand our market leading gas analysis products and technologies. We look
forward to joining the outstanding team at AMETEK."

The closing of the transaction is subject to customary closing conditions,
including the approval of MOCON's shareholders and applicable
regulatory approvals. The transaction is expected to be completed in the
late second quarter or third quarter of calendar year 2017.

47.    As noted in both the press release and Merger Agreement, MOCON's

stockholders will have the right to receive, in exchange for each share of MOCON

common stock, $30 per share in cash. However, the consideration to be paid to Plaintiff and the Class in the Proposed Transaction is inadequate because, among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

48.    Here, the Individual Defendants have secured a deal that significantly harms shareholders, as Plaintiff and the Class will lose their right to share proportionately and equitably in the future success of the Company as a standalone entity.

**The Proxy Statement Omits Material Information**

49.    On April 28, 2017, MOCON filed the Proxy Statement with the SEC. As alleged below and elsewhere herein, the Proxy Statement contains material misrepresentations and omissions of fact that must be cured to allow MOCON's stockholders to render an informed decision with respect to the Proposed Transaction.

50.    As discussed below, the Proxy Statements omits material information regarding (i) the sale process leading up to the Tender Offer; (ii) the valuation analyses prepared by MOCON's financial advisor, Baird, in connection with the rendering of its fairness opinion; and (iii) MOCON's management's projections, utilized by Baird in its financial analyses. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to MOCON's stockholders.

51.    With regard to the omission of material information relating to the sale process leading up to the Proposed Transaction, the Proxy Statement states at that the

Company entered into a confidentiality agreement with six strategic partners to facilitate the discussion of various potential strategic opportunities. However, details regarding the nature of the confidentiality agreements are worryingly absent from the Proxy Statement. As noted in the Proxy Statement, these agreements contained a standstill provisions that prohibited the companies, for a stated period of time, from making unsolicited offers to acquire MOCON outside of the process being run by Baird. Nevertheless, the Proxy Statement fails to disclose the details of the standstill, including the nature of the sunset provision, or whether these strategic partners could seek waivers. Although the Proxy Statement discloses that the Merger Agreement permits the Company to waive standstills in some instances, this disclosure is materially misleading if the parties could not seek waiver. Without this information, the Company's stockholders are being misled into assuming that these other industry participants, which were actively interested in acquiring the Company, could make an offer to acquire the Company if they so choose – when they may have been contractually precluded from doing so.

52.    Additionally, the sales process that culminated in the Merger Agreement was tainted by potential conflicts of interest. During the two-year period preceding the issuance of Baird's fairness opinion, Baird provided investment banking services to AMETEK in connection with its acquisition of Zygo Corporation in June 2014, and for which Baird was paid a transaction fee.  The Proxy Statement, however, fails to disclose the amount of this transaction fee.   Such information is material to MOCON stockholders' assessment of potential conflicts of interest.

53.     The Proxy Statement also fails to disclose critical information concerning MOCON's managements' projections, as utilized by Baird in its financial analyses, and the opinions and analysis of Baird, on which the Board purportedly relied. All this omitted information, if disclosed, would significantly alter the total mix of information available to MOCON's stockholders that they would rely upon in deciding how to vote on the Proposed Transaction.

54.     With respect to Baird's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose the estimated future unlevered free cash flows of the Company used by Baird in its analysis and some of its constituent line items. Additionally, the Proxy Statement also fails to disclose material information concerning the Company's financial projections.  Specifically, the Proxy Statement fails to disclose: (i) interest, (ii) income taxes, (iii) certain nonrecurring expenses (including expenses relating to realignment, share based compensation, personnel no longer with MOCON, transaction expenses associated with the merger and certain other nonrecurring items); (iv) depreciation; (v) amortization of intangible assets; and (v) stock-based compensation expense. Furthermore, the Proxy Statement fails to reconcile all non-GAAP metrics to their corresponding GAAP metrics, thereby rendering the provided disclosure materially incomplete and misleading.

55.     Specifically, the Proxy Statement provides two non-GAAP metrics, Adjusted EBIT and Adjusted EBITA. Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance. Rather than

disclose the information necessary to reconcile these measures with corresponding GAAP metrics, Defendants merely list the components that went into their calculation. This definition is materially misleading without the associated values.

56.    Because of the non-standardized and potentially manipulative nature of non-GAAP measures, the SEC requires the disclosure of certain information in solicitation materials. Thus, when a company discloses information in a Proxy Statement that includes non-GAAP financial measures, as is the case here, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100. Item 10(e)(1)(i)(B) of SEC Regulation S-K further states that, with regard to forward-looking information such as financial projections, *any* reconciling metrics that are available without unreasonable efforts must be disclosed.  17 C.F.R. 229.10(e)(1)(i)(B).  Consequently, without disclosure of these reconciling metrics, the Recommendation Statement violates SEC regulations and materially misleads MOCON's stockholders.

57.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to MOCON's stockholders. Accordingly, based on the foregoing disclosure deficiencies in the Proxy Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will suffer, absent judicial intervention, if MOCON's stockholders are required to vote on the Proposed Transaction without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

## COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

58.    Plaintiff repeats and realleges each allegation set forth herein.

59.    As detailed herein, Defendants disseminated the false and misleading Registration Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

60.    By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of MOCON.

61.    By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by Defendants. The Registration Statement misrepresented and omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual

intrinsic value of the Company's assets. Defendants were at least negligent in filing and disseminating the Registration Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Registration Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

62.    The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

63.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## COUNT II
### Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

64.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65.    The Individual Defendants acted as controlling persons of MOCON within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers or directors of MOCON and their participation in and awareness of

the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

66.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

68.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

69.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)    declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)    declaring that the Recommendation Statement is materially false or misleading;

(C)    enjoining, preliminarily and permanently, the Proposed Transaction;

(D)    in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)    directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)    awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)    granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  May 18, 2017

**HELLMUTH & JOHNSON, PLLC**


By _____*s/Russell M. Spence, Jr.*_____
Russell M. Spence, Jr. #241052
8050 West 78th Street
Edina, MN 55439
952.941.4005
mspence@hjlawfirm.com

*Attorney for Plaintiff*

LEVI & KORSINSKY LLP
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com
          etripodi@zlk.com

*Attorney for Plaintiff*